IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | |
|---|---|
| TREY SIMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:16-cv-572 |
| | ) |
| CLAIBORNE RICHARDSON, | ) |
| | ) |
| and | ) |
| | ) |
| Kenneth E. Labowitz, | ) |
| Administrator pursuant | ) |
| to *Code of Va.* § 64.2-454 | ) |
| of the ESTATE OF DAVID E. | ) |
| ABBOTT | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on both Defendants' Motions to Dismiss the Second Amended Complaint.

Defendant Claiborne T. Richardson II ("Richardson") is an Assistant Commonwealth's Attorney for Prince William County, Virginia; Defendant Kenneth E. Labowitz is Administrator pursuant to *Code of Va.* § 64.2-454 of the Estate of David E. Abbott ("Abbott Estate"), deceased detective of the Manassas City Police Department. Plaintiff Trey Sims ("Plaintiff") brings an action alleging violations of his Fourth and Fourteenth Amendment rights (Counts I, IIA, IIB, and III); conspiracy to interfere with his civil rights under 42 U.S.C. §

1983 (Count IV); and production of child pornography in violation of 18 U.S.C. § 2251(a) (Count V).

When Plaintiff was 17 years old, he and his then girlfriend exchanged sexually explicit photographs and videos. In January 2014, Plaintiff's girlfriend's mother reported this behavior to the Manassas City Police Department, which initiated an investigation of Plaintiff. Detective Abbott was the lead detective on the investigation. On January 6, 2014, Plaintiff was charged with the juvenile version of felony manufacture and distribution of child pornography. Assistant Commonwealth's Attorney Claiborne Richardson was the lead prosecutor on the case. On the date of Plaintiff's trial, June 3, 2014, Richardson made and Plaintiff rejected a plea offer. Richardson dismissed the charges against Plaintiff on a nolle prosequi.

That same day, Detective Abbot—at Richardson's direction—obtained and executed a detention order from the juvenile court service unit to detain Plaintiff in a secure juvenile detention center. Detective Abbott also obtained a search warrant authorizing him to photograph Plaintiff's erect penis and other parts of Plaintiff's body for use in the underlying investigation. At the juvenile detention center, Detective Abbott directed Plaintiff to use his hand to manipulate his penis so that Plaintiff could stimulate an erection. Detective

2

Abbott took pictures of Plaintiff's penis, which remained flaccid.

On June 4, 2014, Plaintiff was arraigned once more, this time on charges of possession and distribution of pornography. On June 13, 2014, Detective Abbott told Plaintiff's counsel that he needed photographs of Plaintiff's erect penis to compare to the images being investigated. The detective advised counsel that Plaintiff could accomplish an erection himself, or that the police could take Plaintiff to a hospital to give him an erection-inducing injection. At a court hearing on July 1, 2014, Plaintiff rejected a second plea offer. That same day, Detective Abbott sought and obtained a second search warrant for photographs of Plaintiff's erect penis. Plaintiff moved to quash the warrant, and Richardson agreed in open court not to execute the new warrant or to introduce the previously-obtained photographs in Plaintiff's case.

On August 1, 2014, Plaintiff's charge of felony manufacture of child pornography was amended to felony possession thereof. At trial, on August 4, 2014, the Juvenile and Domestic Relations Court, making no finding of guilt, suspended imposition of a sentence pending Plaintiff successfully completing a one-year probation. After successful completion of the terms of his probation, Plaintiff's charges were dismissed in August 2015.

Plaintiff filed his initial complaint on May 25, 2016. He amended his complaint on June 6, 2016, and then filed a Second Amended Complaint—the operative complaint—on July 25, 2016, upon leave from the Court. Plaintiff alleges the following counts: (I) Fourth Amendment violation for seizing Plaintiff in the juvenile detention center without probable cause; (IIA) Fourth Amendment violation for procuring photographs of Plaintiff's penis; (IIB) in the alternative to Count IIA, Fourteenth Amendment substantive due process violation for procuring photographs of Plaintiff's penis; (III) Fourteenth Amendment substantive due process violation for threatening Plaintiff with an erection-producing injection; (IV) conspiracy to interfere with Plaintiff's Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1983; and (V) production of child pornography in violation of 18 U.S.C. § 2251(a), actionable under 18 U.S.C. § 2255. Defendants now move to dismiss the Second Amended Complaint under FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although a court considering a motion to dismiss must accept all well-pled factual allegations as true, this deference does not extend to legal conclusions.

Neither "naked assertions devoid of further factual enhancement" nor "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" suffice. Id. After Iqbal, complaints are required to allege "a *plausible* claim for relief" instead of merely stating facts that leave open "the *possibility* that a plaintiff might later establish some set of undisclosed facts to support recovery." McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 587 (4th Cir. 2015) (emphasis in original). In sum, the plausibility standard is the touchstone by which a complaint's adequacy is determined.

Because Richardson and Detective Abbott were employed as government officials, the Court must determine whether they are immune from Plaintiff's suit for damages. Governmental officials receive either absolute or qualified immunity from suits for damages "to shield them from undue interference with their duties and from [the] potentially disabling threats of liability." Harlow v. Fitzgerald, 457 U.S. 800, 806 (1982). Although most officials receive only qualified immunity, absolute immunity shields a state prosecutor acting within the scope of his duties in initiating and pursuing a criminal prosecution and in presenting the state's case. Imbler v. Pachtman, 424 U.S. 409, 430 (1976). These activities are "intimately associated with the judicial phase of the criminal

5

process[.]" Id. In other words, absolute immunity extends to those acts "which occur in the course of [the prosecutor's] role as an advocate for the State." Buckley, v. Fitzsimmons, 509 U.S. 259, 273 (1993); see also Dababnah v. Keller-Burnside, 208 F.3d 467, 470-72 (4th Cir. 2000). On the other hand, a prosecutor engaged in investigative or administrative functions, or in providing legal advice to the police, receives the lesser protection of qualified immunity. Buckley, 509 U.S. at 273-74; Burns v. Reed, 500 U.S. 478, 492-93 (1991).

The Court finds that Richardson is entitled to absolute immunity. Richardson's conduct during Plaintiff's criminal case was not merely investigatory or administrative, and it did not amount to providing legal advice to Detective Abbott. Rather, Richardson acted within the scope of his prosecutorial duties. Richardson prosecuted Plaintiff using search warrants, plea offers, detention, and supervision. All of these tools were part of "initiating a prosecution and ... presenting the State's case," and thus, Richardson's conduct in deploying these tools is protected by absolute immunity. See Imbler, 424 U.S. at 431.

Plaintiff compares his case to Burns v. Reed, where a state prosecutor advised police officers that they could question a murder suspect under hypnosis, but did so only after the officers asked whether hypnosis was an acceptable investigative technique. 500 U.S. at 482. When the suspect confessed to the

6

murder while hypnotized, the prosecutor advised the police that they "probably had probable cause" to arrest the suspect. Id. In the present case, Plaintiff does not claim that Detective Abbott was unsure of the legality of photographing Plaintiff's penis and thus turned to Richardson for guidance. Authorizing the gathering of evidence for a case he was prosecuting does not amount to Richardson providing legal advice to the police.

Plaintiff further argues that his constitutional rights were violated because one of the searches occurred after the case was nolle prossed, before Plaintiff was re-charged. Plaintiff offers no legal authority to support this argument. Further, "the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom[,]" which may require "obtaining, reviewing, and evaluating" evidence. Imbler, 424 U.S. at 431 n. 33. Richardson acted within the scope of his duties in initiating and pursuing a criminal prosecution when he worked with Detective Abbott to obtain evidence necessary to prosecute Plaintiff. The Court finds that Richardson is entitled to absolute immunity. Thus, all claims against Defendant Claiborne Richardson must be dismissed.

The Court also finds that Detective Abbott, and therefore, the Abbott Estate, is entitled to qualified immunity. Qualified immunity protects government officials from liability for civil

7

damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Messerschmidt v. Millender, 132 S. Ct. 1235, 1239 (2012) (internal quotation marks omitted). Thus, there are two steps in the qualified immunity analysis. Step one is to determine if the plaintiff has shown a violation of a constitutional right. If there is a violation of a right, step two is to determine if that right was clearly established in the specific context of the case at the time of the defendant's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 232 (2009); Figg v. Schroeder, 312 F.3d 625, 635 (4th Cir. 2002). If there has been no violation of a constitutional right, then the defense of qualified immunity is not necessary or may not even be implicated. Saucier v. Katz, 533 U.S. 194, 206 (2001).

Plaintiff claims that Detective Abbott violated his rights by detaining him without cause on the basis of misrepresentations to a magistrate, and by seeking and taking photos of Plaintiff's penis. In regards to his detention, there is no violation of a constitutional right because Plaintiff has not alleged sufficient facts to show that Abbott made material misrepresentations in seeking a detention order. Plaintiff argues that the Defendants conspired to misrepresent Plaintiff's dangerousness, but he does not identify how they did so besides

8

presenting positive traits about himself—that he was a local, compliant, peaceful student—and concluding that the Defendants were motivated by spite.

The magistrate judge issued the detention order based on facts Detective Abbott presented. Although "reviewing courts will not defer to a warrant based on an affidavit that does not provide a substantial basis for determining the existence of probable cause," Plaintiff has not alleged sufficient facts indicating that the affidavit contained misrepresentations beyond his own conclusion that detention was unnecessary for the investigation or prosecution. See Arkansas Chronicle v. Murphy, 183 Fed. Appx. 300, 308 (4th Cir. 2006). As a result, there is no evidence that Abbott violated Plaintiff's rights by seeking and executing a detention order.

In regards to seeking and taking photographs of Plaintiff's penis, even if this conduct violated Plaintiff's rights, the "clearly established" standard is not satisfied here. To be clearly established, a right must be sufficiently clear "that every reasonable official would have understood that what he is doing violates that right." Estate of Armstrong ex rel. Armstrong v. Village of Pinehurst, 810 F.3d 892, 907 (4th Cir. 2016). The inquiry is an objective one, dependent not on the subjective beliefs of the particular officer at the scene, but instead on what a reasonable officer would have understood under

9

those circumstances. Figg, 312 F.3d at 635-36 ("Under the doctrine of qualified immunity, officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.").

At the time of the incident, it was not "clearly established" that Detective Abbott would violate Plaintiff's constitutional rights by seeking photographs of Plaintiff's penis. Search warrants are routinely issued notwithstanding their seeming intrusion into the privacy of the individuals being searched. See, e.g., Willis v. Commonwealth, No. 0171-96-3, 1997 WL 39801, at *2-3 (Va. Ct. App. Feb. 4, 1997) (upholding search warrant issued to examine defendant's penis to see if it matched description offered by sex assault victim); Roadcap v. Commonwealth, 653 S.E.2d 620, 622-23, 626 (affirming conviction of defendant whose body was inspected for tattoos, including his penis). Regardless of any subjective intentions he may have had, Detective Abbot did not act unreasonably in seeking a search warrant to photograph Plaintiff's penis, because similar warrants have been issued and upheld to collect evidence during criminal investigations and prosecutions. In other words, a reasonable officer would have understood under similar circumstances that seeking and executing the same search warrant did not violate the law. See Figg, 312 F.3d at 635-36. In light of the analysis of these principles, the Court finds that

Detective Abbott, and therefore, the Abbott Estate, is entitled to qualified immunity. Thus, all claims against Defendant Kenneth E. Labowitz, Administrator Pursuant to *Code of VA* § 64.2-454 of the Estate of David Abbott must be dismissed.

Because both Defendants maintain immunity from Plaintiff's suit, Plaintiff fails to state a claim on which relief can be granted. An appropriate order shall issue.

/s/ Claude M. Hilton

CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia

September 19, 2016